**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ARELS PATUSHI,<br>*Plaintiff*,<br><br>v.<br><br>GLOBAL LENDING SERVICES LLC,<br>*Defendant*. | No. 3:23-cv-00946 (JAM) |

**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND ORDER OF STAY**

Arels Patushi entered a retail installment contract with BMW of North Haven to finance his purchase of a car. BMW assigned its interest in this contract to Global Lending Services LLC ("GLS"). Patushi sued GLS for breach of contract, and GLS has now moved to compel arbitration.

Because the record shows that the parties validly entered into an arbitration agreement and that Patushi's claims are within the scope of that agreement, I will grant the motion to compel arbitration and stay this action pending the outcome of the arbitration proceeding.

**BACKGROUND**

In 2021, Arels Patushi entered into an installment contract with BMW of North Haven to finance his purchase of a car.[1] BMW assigned its interest in this contract to Global Lending Services.[2] In July 2023, Patushi sued GLS for breach of contract.[3] GLS has moved to compel arbitration, arguing that the installment contract included a mandatory arbitration provision.[4] In support of its motion, GLS has submitted a copy of the signed agreement, which includes a portion titled "Arbitration Provision" stating: "Any claim or dispute . . . including [with respect

[1] Doc. #14-1 at 2.
[2] *Id.* at 6; Doc. #1 at 2.
[3] Doc. #1.
[4] Doc. #13 at 1.

to] the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."[5]

Patushi has responded with a document in which he alleges that he "cancell[ed]" the arbitration agreement.[6] He includes a 2022 letter to GLS in which he notified them that he "no longer consents to take part in an arbitration process due to a breach of contract by [GLS]."[7] Patushi also filed an untimely objection to GLS's motion, alleging, *inter alia*, that GLS never disclosed various legal implications of the installment contract and that GLS "t[ook] advantage" of him and "trick[ed him] into signing a contract."[8] GLS has objected to Patushi's late submission.[9]

## DISCUSSION

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, requires enforcement of agreements to arbitrate and "embodies a national policy favoring arbitration." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 228 (2d Cir. 2016).[10] Because arbitration "is a matter of consent, not coercion," however, the FAA "does not require parties to arbitrate when they have not agreed to do so." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002).

"[B]efore an agreement to arbitrate can be enforced, [a court] must first determine whether such an agreement exists between the parties." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 101 (2d Cir. 2023). Courts apply a "standard similar to that applicable for a motion for summary

---

[5] Doc. #14-1 at 6.
[6] Doc. #18 at 1.
[7] *Id.* at 2.
[8] Doc. #19 at 2. Patushi's other arguments in the objection rest on the false premise that his purported "cancellation" had legal effect.
[9] Doc. #20 at 1-2.
[10] Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

judgment." *Nicosia*, 834 F.3d at 229. That is, courts must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, . . . together with . . . affidavits," and must "draw all reasonable inferences in favor of the non-moving party." *Ibid.* "The party seeking to compel arbitration must 'substantiate its entitlement to arbitration by a showing of evidentiary facts' that support its claim that the other party agreed to arbitration. 'If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried.'" *Maguire v. Ameriprise Fin. Servs., LLC*, 2022 WL 1718038, at *5 (D. Conn. 2022) (quoting *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)); *accord Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022).

GLS contends that "the Court need not address [the] threshold question" of whether a valid arbitration agreement exists "because the Arbitration Provision states explicitly that 'the arbitrability of the claim or dispute . . . shall . . . be resolved by a neutral, binding arbitration and not by a court action.'"[11] I do not agree. "Questions concerning the formation and existence of an arbitration agreement must be resolved by the courts in the first instance." *Olin*, 73 F.4th at 101. While parties may "agree to arbitrate threshold questions such as whether the arbitration clause applies to a particular dispute . . . parties may not delegate to the arbitrator the fundamental question of whether they formed the agreement to arbitrate in the first place." *Doctor's Assocs., Inc. v. Alemayehu*, 934 F.3d 245, 251 (2d Cir. 2019).[12]

---

[11] Doc #13 at 4.

[12] GLS cites *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010), but three days after the *Rent-A-Ctr.* decision, the Supreme Court reiterated that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute. To satisfy itself that such agreement exists, the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause that a party seeks to have the court enforce . . . *[T]hese issues always include whether the clause was agreed to*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis added).

***Agreement to arbitrate***

Whether the parties agreed to arbitrate is a question of state contract law. *See Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019); *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 73-74 (2d Cir. 2017). Thus, to decide if Patushi agreed to arbitration, I must "apply ordinary state-law principles that govern the formation of contracts." *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021) (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

I apply Connecticut law. The installment contract in this case contains a choice of law provision stating: "Federal law and the law of the state of our address shown on page 1 of this contract apply to this contract."[13] Page 1 lists a Connecticut address, so Connecticut law applies here.[14] Even if this choice-of-law provision were suspect, the contract was entered into at a Connecticut dealership involving a Connecticut buyer, such that Connecticut law would apply under background choice of law principles. *See Wilmore v. Charter Commc'ns LLC*, 2023 WL 2503306, at *4 (D. Conn. 2023) (applying "most significant relationship" test).

Patushi signed each of the five pages in the written installment contract, including the one containing the arbitration provision, and BMW signed where required.[15] None of the parties' submissions presents a genuine issue of fact as to the contract's authenticity or validity. The record thus shows that the parties here entered an agreement providing for arbitration. "When an agreement is reduced to writing and signed by all parties, the agreement itself is substantial evidence that a meeting of the minds has occurred." *Tedesco v. Agolli*, 182 Conn. App. 291, 308 (2018); *see also Success Sys., Inc. v. CRS, Inc.*, 2023 WL 2742344, at *10 (D. Conn. 2023)

---

[13] Doc. #14-1 at 5.
[14] *Id.* at 2. Accordingly, the Fourth Circuit law that GLS presents is not helpful.
[15] *See generally* Doc. #14-1.

(noting that, under Connecticut law, "the presence of a written agreement is generally strong evidence of a contractual relationship").

Patushi's only timely-filed counterargument seems to be that he cannot be compelled to arbitrate because he "cancelled" the arbitration provision. This argument fails under both Connecticut law—which deems arbitration agreements "irrevocable"—and the contract itself, which provides that "[a]ny change to this contract must be in writing and [BMW] must sign it."[16]

I decline to exercise my discretion to consider, over GLS's objection, Patushi's late-filed opposition alleging that GLS failed to disclose certain legal implications of the agreement and otherwise took advantage of him.[17] Patushi did not file for an extension of time, nor has he shown good cause for his delay.

In any event, there is no merit to the arguments raised in his late-filed objection. Patushi's allegations that GLS dealt in bad faith lack any support in the record. *See Salomon Smith Barney, Inc. v. Cotrone*, 81 Conn. App. 755, 760 (2004) (affirming the trial court's order to compel arbitration because, in part, "the record is devoid of any factual or legal support from which the court or we could determine that the agreement to arbitrate violated the defendant's right to be treated in good faith" and "the defendant's claim that he was deceived as to the effect of the agreement finds no support in the record").

By submitting a written agreement that is valid under Connecticut law, GLS has shown evidentiary facts supporting its claim that Patushi agreed to arbitration. Patushi has failed to show that there is a dispute of fact to be tried because his purported cancellation of the agreement has no legal effect. Therefore, I conclude that an agreement to arbitrate exists.

---

[16] *Id.* at 6; *see also* Doc. #20 at 2 ("[T]he Contract itself provides for the only way its terms may be changed.").
[17] Doc. #20 at 1-2; Doc. #19 at 1-2.

***Scope of arbitration***

Given that the parties agreed to arbitrate, the next question is whether Patushi's breach of contract claim is within the scope of the arbitration agreement. *See Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101 (2d Cir. 2022). Ordinarily, this question is also for a court to decide unless the parties have clearly and unmistakably delegated to the arbitrator the arbitrability of any particular claim. *See DDK Hotels*, 6 F.4th at 317. Here, they have done so in agreeing that "[a]ny claim or dispute . . . including [with respect to] the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute . . . shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action."[18]

Even if they had not delegated this issue to the arbitrator, it is clear that Patushi's breach of contract claim is well within the scope of claims subject to arbitration. The arbitration agreement covers "[a]ny claim or dispute, whether in contract, tort, statute or otherwise . . . between you and us or our employees, agents, successors or assigns, which arises out of or relates to . . . this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)."[19] "Where the question is whether a given dispute falls within the scope of the arbitration agreement (and is therefore arbitrable), any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Ibid.*

***Dismissal or stay***

Finally, I must decide whether to dismiss or stay this action pending arbitration. In *Katz v. Cellco Partnership*, 794 F.3d 341, 347 (2d Cir. 2015), the Second Circuit interpreted the FAA to "mandate a stay of proceedings when all of the claims in an action have been referred to arbitration and a stay requested." By contrast, "the FAA permits courts to dismiss rather than

[18] Doc. #14-1 at 6.
[19] *Ibid.*

stay litigation pending arbitration if the party does not request a stay and if all claims in the action will be resolved by arbitration." *Dylan 140 LLC v. Figueroa as Tr. of Bldg. Serv. 32BJ Health Fund*, 982 F.3d 851, 858 n.2 (2d Cir. 2020).

What should a court do if a party moves to dismiss and in the alternative for a stay? The answer is that *any* request for a stay—even if conjoined with a request for dismissal—triggers the rule of *Katz* that a stay rather than a dismissal must be granted. *See Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 226 n.5 (2d Cir. 2019); *see also AKF, Inc. v. Kessman Grp. Painting & Designs, Inc.*, 2021 WL 178867, at *5 (E.D.N.Y. 2021) (same); *Moton v. Maplebear Inc.*, 2017 WL 5515943, at *2 (S.D.N.Y. 2017) (same).

Here, GLS vacillates between seeking dismissal or a stay.[20] That is enough to require me to stay the case rather than dismiss it outright as I otherwise might have done. The parties shall proceed to arbitration, and the Court expects that Patushi will receive a prompt and fair hearing in accordance with the agreed-upon arbitration rules.

[20] *Compare* Doc. #13 at 1 (GLS "moves for entry of an order . . . *dismissing* this action after referring the parties to arbitration."), *with id.* at 8 (GLS "requests that the Court compel Patushi to arbitrate his claims against all parties and stay the action."), *and* Doc. #20 at 3 (GLS "requests that the Court compel Patushi to arbitrate his claims against all parties and dismiss the Complaint, or *alternatively*, to stay the action.") (emphases added).

## CONCLUSION

For the reasons set forth above, the Court GRANTS GLS's motion to compel arbitration (Doc. #13) and STAYS the action pending arbitration. GLS shall file a status report concerning the progress of arbitration on **July 1, 2024**, and every 90 days thereafter. One or both parties shall promptly file a notice on the docket when arbitration is completed and state their positions whether the Court should dismiss the case or whether it is necessary for the Court to take any further action. In light of this ruling granting GLS's motion to compel arbitration, the Court DENIES as moot Patushi's motion to order (Doc. #22).

The Clerk of Court shall administratively close this case subject to re-opening for the purposes of dismissal and/or any further action that may be warranted upon notification by the parties that they have completed the arbitration process.

It is so ordered.

Dated at New Haven this 26th day of March 2024.

/s/ ***Jeffrey Alker Meyer***
Jeffrey Alker Meyer
United States District Judge